ORIGINAL

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR405-20 |
| | ) |
| SYLVESTER DAVIS and JOSHUA CRAIG SHEPPARD, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Defendants have filed motions to suppress. Docs. 29 & 32. The government has responded in opposition to the motions. On May 17, 2005, the Court held an evidentiary hearing at which time the government presented the testimony of Officer Larry Harris of the Savannah Chatham Metropolitan Police Department ("SCMPD") and Corporal Gilbert Walker, Jr. of the SCMPD. The defendants also testified. For the reasons that follow, the Court RECOMMENDS that the motions to suppress be DENIED.

## I. BACKGROUND

On August 25, 2004, Officer Harris was riding in his patrol car when he heard a call from dispatch that someone had reported a subject with a gun in the 200 block of West 38th Lane arguing with another individual. Dispatch described the subject as a tall thin black male wearing a white shirt and blue pants. Officer Harris drove toward that area, and when he was just a couple of blocks away he observed a man walking down the street away from the 200 block of West 38th Street. Officer Harris noticed that the man was bleeding profusely from his head. When he approached, the individual informed him that he had been "pistol-whipped" in the same area of the reported man with a gun.

By this time, Officer Harris had been joined by Corporal Walker, who was on patrol in his own squad car. The two officers proceeded to the 200 block of West 38th Lane, one approaching from the east and one approaching from the west. As they drove down the lane, Corporal Walker approached the house at 215 West 38th Street and observed two black males standing in the backyard, one of them fitting the description provided by dispatch.

Corporal Walker was familiar with this general neighborhood, which was his regular beat. He testified at the evidentiary hearing that there was a lot of prostitution and drug activity in that area and that the police responded to numerous calls from that area on a daily basis. Corporal Walker was also familiar with the house at 215 West 38th Street because of reported drug activity in that backyard. While the back yard of 215 West 38th Street was fenced on two sides, the yard was open to the lane.

Corporal Walker stopped his patrol car, exited his vehicle, and approached the two men in the yard. As he approached, Corporal Walker explained that he was there to investigate a report of an assault in that lane and a report of someone with a gun. Officer Harris arrived just thereafter and also exited his vehicle. Corporal Walker immediately recognized defendant Sheppard, who was once married to his youngest sister. His prior knowledge of Sheppard also included a familiarity with Sheppard's status as a convicted felon. Corporal Walker began talking to Sheppard, and he instructed defendant Davis to go speak with Officer Harris, who was a short distance away. Corporal Walker intended to separate the suspects

for officer safety. Neither defendant objected to the officers' presence in the yard or asked them to leave.

As he approached Officer Harris, Davis turned so that Officer Harris was able to see a bulge in the back waistband of Davis's pants. At this point, Officer Harris initiated a patdown search of Davis's person and discovered what felt like the handle of a handgun. In response, Davis attempted to flee on foot but was tackled and brought to the ground by Officer Harris. Once Davis was secured on the ground, Officer Harris removed a .40 caliber handgun concealed in Davis's waistband and found a small bag of marijuana and fifteen small bags containing crack cocaine in his pocket. Davis was handcuffed and moved to a patrol car.

Before this commotion started, Corporal Walker was talking to Sheppard. When Davis began to run, Corporal Walker ordered Sheppard to get on the ground and not to move. Once Davis was secured and a handgun was recovered from his person, Corporal Walker asked Sheppard if he had a gun on his person and Sheppard replied affirmatively. Corporal Walker then searched Sheppard's person and discovered a loaded gun, a utility knife, and a drug related object. Sheppard was also handcuffed and

placed in a squad car. Both defendants were transported to the precinct and later questioned.

On the way to the precinct, the officers stopped to have the earlier encountered bleeding man observe the suspects. He identified Sheppard as the man who had struck him. He also volunteered that both Sheppard and Davis had been carrying guns.

On March 3, 2005, both defendants were indicted on federal charges based on their possession of firearms and the distribution of drugs on an earlier date. On March 25, 2005, Davis filed his motion to suppress, and Sheppard filed an identical motion on April 4, 2005. Both defendants seek suppression of all evidence seized as a result of the events that occurred on August 25, 2005.

## II. ANALYSIS

In their motions, defendants argue that the officers' entry into the backyard of 215 West 38th Street and the search of their persons was illegal. Defendants contend that the officers had no search warrant and that no exigent circumstances existed to justify a warrantless search.

Defendants further argue that any statements they made after their arrest must be suppressed as the fruit of the poisonous tree. The government responds that the officers' entry into the yard was proper and that they had sufficient reasonable suspicion to effect a <u>Terry</u> stop and frisk of defendants. The Court agrees with the government.

First, defendants are mistaken in their assertion that the officers somehow violated their Fourth Amendment rights by walking into the yard to question them about the report they received from dispatch and the bleeding man they encountered on the street.

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof – whether the questioner be a pollster, a salesman, or an officer of the law.

<u>Davis v. United States</u>, 327 F.2d 301, 303 (9th Cir. 1964); see also <u>United States v. Tobin</u>, 923 F.2d 1506, 1512 (11th Cir. 1991) (citing <u>Davis</u> and holding that officers are entitled to approach house to question occupants); <u>Rogers v. Pendleton</u>, 249 F.3d 279, 289-90 (4th Cir. 2001) ("[P]olice officers

do not need a warrant to do what any private citizen may legitimately do – approach a home to speak to the inhabitants."). The fact that the officers approached the back yard of the house from the lane as opposed to the front yard from the street is of no consequence.

Not only was the officers' initial approach of defendants reasonable, so was the search of their persons. In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that an officer can frisk an individual if "a reasonably prudent man in the same circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. Under the Eleventh Circuit's decision in United States v. Bonds, 829 F.2d 1072 (11th Cir.. 1987), the circumstances justifying a stop should be considered separately from the factors leading to the frisk. See 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.6(a) (4th ed. 2004) (noting that circumstances leading to a Terry stop do not always justify a frisk). The standard justifying a frisk "requires an objectively reasonable fear based on specific facts regarding specific individuals. A generalized suspicion or 'hunch' will not justify a frisk." Bonds, 829 F.2d at 1075. "[W]hen an officer legitimately encounters an individual, whether

he is investigating that individual or not, the officer may reasonably believe himself to be in danger and may wish to determine quickly whether that person is armed." Id. at 1074.

In the instant case, the Officer Harris had received a report from dispatch that an armed man was arguing in the 200 block of West 38th Lane. On his way to investigate that report, he encountered a bleeding man who stated that he had been hit in the head with a pistol by a man fitting the same description and located in the same area as reported by dispatch. When Officer Harris arrived and saw Davis, who fit the description provided, he certainly had reason to believe that Davis might be armed. This belief was furthered when Officer Harris observed a bulge at the back of Davis' waistband.[1] These facts are clearly sufficient to provide Officer Harris with a reasonable belief that Davis was armed and fully support a Terry frisk.

---

[1] There was some conflict in testimony as to whether Officer Harris would have been able to observe a bulge in the back of Davis's waistband. Officer Harris testified that Davis turned as he was approaching, allowing the bulge to be seen. Davis, on the other hand, testified that he was facing Officer Harris during the entire encounter and did not turn until Officer Harris began to conduct the pat down search. The Court credits the testimony of Officer Harris over Davis.

Once Officer Harris began his frisk and discovered what felt like the handle of a hand gun, Davis attempted to flee on foot. "Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Wardlaw, 528 U.S. at 124. Davis's flight coupled with his similarity to the dispatch description, his presence in the same area and at the same time as the complaint of a "man with a gun," the report of the bleeding man, and the presence of what felt like a gun hidden in his waistband served to enhance the officers' level of suspicion that criminal activity was afoot. Therefore, Officer Harris was justified in restraining Davis until his suspicions were either verified or expelled.

Once the gun was discovered on Davis' person, Corporal Walker was justified, for safety reasons, in asking Sheppard whether he was also carrying a gun on his person. New York v. Quarles, 467 U.S. 649 (1984) (holding that an officer may ask a suspect if he has a gun without first giving Miranda warnings where the officer is reasonably prompted by concerns for public safety). When Sheppard replied affirmatively, Corporal Walker was entitled to remove the gun for his safety as well as the safety

of the other area residents. Knowing that Sheppard was a convicted felon, Corporal Walker also had probable cause for Sheppard's arrest.

In sum, the Court finds that the actions of Officer Harris and Corporal Walker were fully justified. Therefore, there is no basis for suppressing the evidence discovered on their persons. Moreover, there is no basis for suppressing any subsequent statements they made when later questioned by officers.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that defendants' motions to suppress be DENIED.

**SO ORDERED this 18th day of May, 2005.**

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

# United States District Court
## *Southern District of Georgia*

UNITED STATES OF AMERICA     *

           vs.     *     CASE NO. CR405-20

Sylvester Davis, et al     *

                             *

The undersigned, a regularly appointed and qualified deputy in the office of this Clerk of this District, while conducting the business of the Court for said Division does hereby certify the following:

1. Pursuant to instructions from the court, and in the performance of my official duties, I personally placed in the U.S. Mail a sealed envelope bearing the lawful frank of the Court, and properly addressed to each of the persons, parties or attorneys listed below;
   and

2. That the aforementioned envelope(s) contain a copy of the documents known as Order dated 5/18/05, which is part of the official records of this case.

Date of Mailing: 5/18/05
Date of Certificate: 5/18/05

                                                SCOTT L. POFF, CLERK

                                                By: JGB

NAME:
1. Sylvester Davis, 1050 Carl griffin Dr., Savannah, GA 31405
2. William Bell, 420 W Broughton St., Savannah, GA 31401
3. Joshua Sheppard, 1050 Carl Griffin Dr., Savannah, GA 31405
4. Rebecca Benton, P.O. Box 707, Pooler, GA 31322
5. 
6. 
7. 

Cert/Copy
- ☐ ☐ District Judge
- ☐ ☒ Magistrate Judge
- ☐ ☐ Minutes
- ☐ ☐ U.S. Probation
- ☐ ☐ U.S. Marshal
- ☐ ☒ U.S. Attorney
- ☐ ☐ JAG Office

Cert/Copy
- ☐ ☐ Dept. of Justice
- ☐ ☐ Dept. of Public Safety
- ☐ ☐ Voter Registrar
- ☐ ☐ U.S. Court of Appeals
- ☐ ☐ Nicole/Debbie
- ☐ ☐ Ray Stalvey
- ☐ ☐ Cindy Reynolds